IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY GLOVER, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. L-09-1390 |
| CATHOLIC CHARITIES, INC., | * | |
| Defendant. | * | |

**************

## **MEMORANDUM**

This in an employment discrimination case. Plaintiff Anthony Glover, pro se, was the senior maintenance mechanic at Defendant Catholic Charities' Kessler Park Senior Housing Community. Glover was suspended from this position in December 2007 pending an investigation into claims that Glover had sexually harassed female co-workers. Glover was terminated in January 2008 for violating Catholic Charities' sexual harassment and client relationship policies.

In his Title VII Amended Complaint, Glover contends that he, in fact, was sexually harassed by female co-workers. He alleges that he complained of this harassment to his supervisors but Catholic Charities not only failed to investigate, it terminated him in retaliation for his complaint. Prior to filing his complaint in federal court, Glover exhausted his administrative remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue letter. His complaint in the instant case was timely filed.

Catholic Charities has filed a Motion to Dismiss the Amended Complaint (Docket No. 14). First, Catholic Charities contends that most of the claims Glover brings in his Amended Complaint were not exhausted administratively. Second, Catholic Charities contends that any remaining claims are so implausible as to warrant dismissal under Twombley.

For the reasons stated herein, the motion will, by separate order, be GRANTED in part and DENIED in part. As stated below, the Court will dismiss without prejudice Glover's negligent misrepresentation, breach of contract, conspiracy, and defamation claims. Glover's Amended Complaint lists these causes of action without making any attempt to support or substantiate them. Glover's sex-based hostile work environment and retaliation by wrongful termination claims will, however, proceed to discovery. After discovery, Catholic Charities may test them pursuant to a motion for summary judgment.

## I.  FACTUAL BACKGROUND

Glover alleges that in 2004, building manager-in training Lois Corbin questioned Sharon Jones, a co-worker, about whether Glover had touched or kissed her. Jones answered "yes," and an investigation ensued. Glover states that management found these allegations to be inconclusive, but alleges that Jones maintained an intimidating attitude thereafter. Glover also alleges that he began to receive miscellaneous write-ups and complaints, that his performance evaluation was withheld, that he was put on progress reporting, and that he began to feel isolated.

Glover complains that, beginning in 2005, he was overworked. Specifically, he claims that Regional Manager Coral Ross required him to assist maintenance staff at other buildings, despite outstanding work orders at his own buildings. Glover claims that Housing Director Rosemary Horstman later questioned him about his outstanding work orders and complains that

Ross did not acknowledge that she sent him to assist with other properties. Glover also alleges that he was then assigned two additional buildings (totaling four buildings) to maintain, setting him up for failure.

Glover also alleges that Ross required him to perform maintenance at her home in violation of company policy. He claims that while at her home, she made sexual advances toward him. Glover states that he never reported this behavior.

Glover claims that, beginning in 2007, housing associate Danielle King would make sexual gestures toward him and would sit in provocative positions, despite his requests that she stop. He also alleges that she implied that he was homosexual by calling him "princess" and "fairy" when he did not accept her sexual advances and that she made working together difficult by refusing work and complaining.

According to Glover, on November 27, 2007, he reported to his supervisor, Betty Cermack, and Ross that he had been verbally harassed and threatened. Ross allegedly scheduled a meeting with Glover, King, and Cermack to discuss these issues the following day.

A meeting was held on November 28, 2007. Glover complains that Ross and Cermack met with King privately before the meeting. He claims that during the meeting he was subjected to threats and insults, that his claims were not heard or taken seriously, and that Jones (who later joined the meeting) made comments about her personal life that were not relevant to Glover's complaints. Glover complains that during the meeting his "rights were violated." (Amended Complaint, ¶ 17).

Glover complains that approximately two weeks later he was asked to meet with Human Resources Director Mary Jane Lavin and Ross. He claims that Lavin and Ross informed him he had been accused of sexual harassment by two females. Glover claims that he denied these

allegations and informed Lavin that it was he who had first complained of sexual harassment. Glover alleges that he was accused of sexual harassment because of his "attempt to come forth with the truth and expose a very serious matter." (Amended Complaint, ¶ 19). Glover was subsequently suspended on December 12, 2007.

Glover alleges that shortly thereafter he was called for a second meeting with Lavin to discuss another matter. Glover claims that he was thereafter "charged with stealing money from a resident and breaking client relations policy." (Amended Complaint, ¶ 21). Glover was terminated on January 29, 2008, for breaching Catholic Charities' sexual harassment and client relations policies.

Glover filled out an EEOC Intake Questionnaire on January 18, 2008, and filed an EEOC Charge of Discrimination on March 3, 2008. Both alleged that Glover had faced discrimination from November 27, 2007 to December 12, 2007. He specifically alleges that he faced retaliation after requesting a meeting to discuss the sexual harassment he had endured. The EEOC dismissed these claims and issued Glover a right-to-sue letter on May 21, 2009. Glover filed a complaint with this Court on May 27, 2009. Catholic Charities moved to dismiss the complaint. Glover was granted leave to file an amended complaint and Catholic Charities subsequently moved to dismiss the amended complaint.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The court must, however, "assume the veracity [of well-pleaded factual allegations] and

then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

**III.    ANALYSIS**

As a preliminary matter, Glover adds to his Amended Complaint claims of negligent misrepresentation, breach of contract, conspiracy, and defamation.  Not a single fact alleged in the Amended Complaint supports or substantiates these claims in violation of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  Fed. R. Civ. Pro. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").  Also, under Twombly, these claims are mere labels and conclusions and do not "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.  Accordingly, they must be dismissed.

Catholic Charities contends that the remaining sex-based hostile work environment and retaliatory discharge claims alleged in the Amended Complaint are beyond the scope of Glover's EEOC charge.  In proceedings before the EEOC, Glover represented himself, and his charge is not a model of clarity.  Construing it liberally, see Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005), Glover contends that he was subjected to a sexually hostile work environment, about which he complained to his supervisors.  Glover complains that after attempting to bring these issues up in a staff meeting, he was himself accused of sexually harassing female co-workers and was suspended, while the females were not disciplined.  He specifically states that he believed he was discriminated against on the basis of his sex (male).  Glover marked only the box labeled "Retaliation" on the charge, however, and wrote that the alleged discriminatory actions took place between November 27, 2007 and December 12, 2007.

5

In its motion to dismiss, Catholic Charities contends that Glover did not exhaust his administrative remedies for any allegation in the Amended Complaint that occurred before November 27, 2007, or after December 12, 2007. Catholic Charities further contends that even if Glover has exhausted his administrative remedies for his claims of hostile work environment and retaliation, Glover did not properly state those claims in his Amended Complaint.

Catholic Charities is correct up to a point. Glover's charge does state that the discrimination took place between November 27, 2007 and December 12, 2007. The central events about which Glover complains is the meeting on November 28, 2007, and his subsequent suspension on December 12, 2007. Glover does not allege in his EEOC charge that he was terminated or that after he called the meeting on November 28, 2007, he was sexually harassed by his co-workers.

Under Fourth Circuit law, however, in a subsequent Title VII lawsuit, the charge must be expanded to include "those [discrimination claims] reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint . . . ." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000). In the instant case, a reasonable investigation would have uncovered Glover's reasons for requesting the staff meeting, his allegations of a sex-based hostile work environment, that Catholic Charities allegedly did not investigate his allegations, and that he was ultimately terminated after his suspension. Glover's charge, therefore, adequately states his core contention, namely, that he was subjected to a sex-based hostile work environment and was subsequently suspended and ultimately terminated for seeking redress from his employer. As such, the claims and allegations stated in the Amended Complaint

(other than those claims that are dismissed above) were exhausted administratively and are properly before this Court.

Next, Glover has alleged that he was sexually harassed, that he complained to his supervisors who failed to investigate these claims, and that he was terminated in retaliation for having complained. Glover has also provided facts to support these allegations. Assuming, as this Court must, that these factual allegations are true, Glover has stated a plausible claim on which relief can be granted, in accordance with Federal Rule of Civil Procedure 8(a)(2) and the Twombly and Iqbal standards. Therefore, Catholic Charities' contention that Glover fails to state a claim on which relief can be granted, with respect to his sex-based hostile work environment and retaliations claims, fails.

Accordingly, the sex-based hostile work environment and retaliatory discharge claims shall proceed to discovery. This Court will promptly issue a scheduling order.

## IV.   CONCLUSION

For the foregoing reasons, this Court will, by separate order, GRANT in part and DENIED in part Catholic Charities' Motion to Dismiss the Amended Complaint.


Dated this 8th day of October, 2009.

/s/
Benson Everett Legg
Chief Judge